# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

JOE A. SANCHEZ,

      Petitioner,

v.                                                    CV 13-988 LH/WPL

JONI BROWN, Warden, and
GARY K. KING, NEW MEXICO
ATTORNEY GENERAL,

      Respondents.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

On a spring evening in 2010, Joe A. Sanchez, also known as Jose Sanchez, brutally attacked his girlfriend at their shared home in Portales, New Mexico, causing serious injuries that ultimately required air transport to Texas for emergency brain surgery and six days of hospitalization. Pursuant to a plea agreement, Sanchez was convicted of aggravated battery and tampering with evidence, and he was sentenced to fifty-four months in prison. Having now filed a Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (Doc. 1), Sanchez challenges this conviction on a variety of grounds. For the reasons stated herein, I recommend that Sanchez's habeas petition be denied.

### PROCEDURAL BACKGROUND

Sanchez was indicted on three counts: Count I, aggravated battery, a third-degree felony, *see* N.M. STAT. ANN. § 30-03-05(C); Count II, tampering with evidence, a fourth-degree felony, *see id.* § 30-22-05; and Count III, possession of a firearm by a felon, a fourth-degree felony, *see id.* § 30-07-16. (Record Proper (RP) 1-2.) In short, the grand jury indictment alleged that

Sanchez committed an aggravated battery against his girlfriend Natalie Lucero, that he tampered with Lucero's clothing to avoid arrest or prosecution, and that he possessed a firearm despite a previous felony conviction within the past ten years. (*Id.*)

On May 13, 2011, before a previously vacated trial setting could be reset (*see* RP 132), Sanchez executed a plea agreement (Ex. D).[1] According to the provisions of this agreement, Sanchez pleaded guilty to Counts I and II, agreeing to a four-year term of incarceration as to the first count and an eighteen-month term of incarceration as to the second count, running consecutively for a total term of incarceration of five and a half years. The plea agreement also included provisions whereby Sanchez waived his right to appeal the resulting convictions as well as "any and all motions, defenses, objections or requests" which had been or could be raised. In exchange for this plea agreement, the State of New Mexico agreed to the dismissal of Count III and the suspension of the final year of Sanchez's sentence, leaving an actual term of incarceration of four and a half years.

A plea disposition hearing was held on June 14, 2011, at which time State District Judge Drew D. Tatum, Ninth Judicial District, Roosevelt County, accepted the plea agreement. (RP 141-43.) At the hearing, Sanchez was placed under oath, and he confirmed that he had read the entire agreement, that he had a chance to discuss it with his attorneys, that he had signed it afterwards, and that he understood the terms and conditions. (RP 142; June 14, 2011 Hearing Recording (HR) 10:08:56-:11:05 AM.) He also testified that he was satisfied with his attorneys.

---

[1] Unless otherwise noted, all referenced exhibits are attached to Respondents' answer (Doc. 9). Additionally, in his state habeas application, Sanchez stated that he "was deemed guilty after a tr[ia]l by jury." (Ex. F.) However, the Record Proper establishes that no trial was held or even set to take place when Sanchez entered his guilty plea, and Sanchez no longer appears to dispute that his conviction and judgment stemmed from a plea agreement (*see* Doc. 1 at 1).

(RP 142; HR 10:14:31-:34 AM.) On June 15, 2011, Judge Tatum filed a Judgment and Sentence reflecting this agreement. (Ex. A.)

On October 17, 2011, for reasons that none of the parties can explain, Judge Tatum filed an Amended Judgment and Sentence that reclassified the evidence-tampering charge as a third-degree felony and added an additional year to Sanchez's term of incarceration. (Ex. B.) The record does not reflect any explanation for these changes, and the Amended Judgment and Sentence itself simply states, "Amended to change total incarceration time to 6½yrs instead of 5½yrs," with no further explanation. The Amended Judgment and Sentence was signed by Judge Tatum and the prosecuting attorney, but not by Sanchez or his attorney.

In February 2012, Sanchez filed a Motion to Correct Judgment and Sentence & Motion to Set Aside Amended Judgment and Sentence, arguing that the original Judgment and Sentence properly calculated Sanchez's term of incarceration and that the Amended Judgment and Sentence was improperly presented to the court. (Ex. E.) A hearing was scheduled for April 12, 2012,[2] and on that date Judge Tatum filed a Corrected Judgment, Sentence, and Order Determining Habitual Offender Status ("Corrected Judgment & Sentence"). (Ex. C.) Like the original Judgment and Sentence, the corrected document reflected a four and a half year term of incarceration, and it again classified Count II as a fourth-degree felony. Pursuant to the plea agreement, Sanchez did not pursue a direct appeal.

On April 8, 2013, Sanchez filed a Petition for Writ of Habeas Corpus with the Ninth Judicial District Court. (Ex. F.) In that document, Sanchez raised five grounds for relief: (I) ineffective assistance of counsel, based on his attorneys' alleged failure to conduct a proper investigation, investigate potential defenses, secure witnesses, and preserve issues; (II)

---

[2] The Record Proper includes neither a log entry nor an audio recording of this hearing, so it is unclear if the hearing ever took place.

conviction in violation of the Fourteenth Amendment, due to "chain of custody [issues] – evidence not verified properly"; (III) conviction in violation of the Sixth Amendment's Confrontation Clause[3] and "the Brady rule"; (IV) conviction in violation of Sanchez's Fourteenth Amendment "right to fundamental fairness," in that "the state should not have talked about prior felonies in open court"; and (V) prosecutorial misconduct that "deprived Mr. Sanchez of a fair tr[ia]l." Sanchez attached to this motion a radiology report describing a May 2010 CT scan of Lucero's head as well as a letter from G. Theodore Davis, M.D., stating findings and conclusions from a review of Lucero's medical records.

Judge Tatum filed a Decision and Order of Summary Dismissal addressing Sanchez's habeas petition on April 18, 2013. (Ex. G.) With respect to Sanchez's allegations of ineffective assistance of counsel, Judge Tatum concluded that Sanchez had failed to show a reasonable probability that the results of the proceeding against him would have been different if not for his attorneys' alleged errors. He also found that the record showed Sanchez's attorneys to have been "both effective and competent," concluding that Sanchez likely benefitted from the sentence in his plea agreement in light of the strong evidence against him and the serious injuries suffered by Lucero. Further, Judge Tatum found that any references to Sanchez's prior felony conviction were permissibly raised at his sentencing hearing. As to Sanchez's other stated grounds for relief, Judge Tatum concluded that these grounds would have been applicable only had the case against Sanchez gone to trial or a motion hearing. Because Sanchez had knowingly waived his right to such defenses and motions in his plea agreement, and because the court could not modify his

---

[3] Reading his filings liberally, it also appears that Sanchez raised a claim under the Compulsory Process Clause of the Sixth Amendment in his state habeas petition and petition for writ of certiorari, drawing comparisons between this claim and his Confrontation Clause arguments. (*See* Ex. F at 8; Ex. R at 2 ("not allowing witness testimony").) However, Sanchez does not raise this claim of error in his federal habeas petition.

sentence pursuant to that agreement, Judge Tatum determined that relief was not available to Sanchez on those grounds.

Twelve days later, Sanchez filed a "Second or Successive Petition for Writ of Habeas Corpus." (Ex. H.) In that petition, Sanchez raised the same grounds for relief that he included in his previous petition, and he complained that Judge Tatum ruled against the earlier petition without holding a hearing even though "no records or files w[]ere produc[]ed to conclusively resolve the issues presented." On June 11, 2013, Judge Tatum rejected this petition in a Decision and Order of Summary Dismissal, in which he incorporated his previous habeas ruling and found that Sanchez "fail[ed] to raise issues requiring further written analysis by this Court, a response from the State or a hearing in this matter." (Ex. I.) Sanchez sought a writ of mandamus from the New Mexico Supreme Court directing Judge Tatum to provide him with counsel and hold an evidentiary hearing (Ex. N), but that petition was rejected (Ex. O).

Sanchez next filed a Petition for Writ of Certiorari with the New Mexico Supreme Court. (Ex. R.) In that document, Sanchez complained that Judge Tatum should have appointed counsel and held an evidentiary hearing, and he once again raised his chain-of-custody, Confrontation Clause, *Brady*, and prosecutorial-misconduct arguments. Sanchez also argued again that his attorneys had provided ineffective assistance, though the only alleged errors raised in this petition involved the attorneys' failure to conduct a proper investigation and secure witness testimony. Sanchez did not include in this petition his earlier argument regarding the discussion of prior felony convictions "in open court," and he did not expressly reassert his ineffective assistance claim on grounds of failure to investigate potential defenses or preserve issues. (*Cf.* Ex. F at 2.) The state supreme court summarily denied the petition on August 2, 2013 (Ex. S),

and it summarily denied Sanchez's timely request for reconsideration of that decision on September 11, 2013 (Ex. U).

Sanchez filed his petition for a writ of habeas corpus in this Court on October 9, 2013 (Doc. 1), raising the same claims for relief that appeared in his habeas petition to the Ninth Judicial District Court. He also asserts that the radiology report and Dr. Davis's letter constitute "newly discover[ed] evidence" and that Judge Tatum erred in failing to appoint an attorney for him before denying his habeas petition.

In their answer (Doc. 9), Respondents first argue that Sanchez's petition is time-barred because it was filed over one year from the date on which the first Judgment and Sentence became final. Next, Respondents argue that Sanchez procedurally defaulted the claims that he failed to raise in his writ of certiorari to the state supreme court. As to the merits of the other claims, Respondents contend that Sanchez has failed to show either deficient performance from his attorneys or any prejudice resulting therefrom, and they assert that Sanchez waived his remaining contentions by accepting the plea agreement and its included waiver of defenses.

Because Respondents raised a defense of procedural default, I ordered Sanchez to file a reply addressing that issue. (Doc. 10.) In his reply (Doc. 12), Sanchez states that he did not mean to leave out the allegedly defaulted claims, pinning this failure on his lack of skill and knowledge in preparing his defense. He also appears to argue that his plea agreement no longer had any force once Judge Tatum "welched" on the agreement by entering the Amended Judgment and Sentence in October 2011. Otherwise, Sanchez's reply reiterates the arguments raised in his habeas petition with this Court.

**TIMELINESS**

"A threshold requirement of any habeas claim is that it must be timely filed." *See United States v. Pursley*, No. 03-cr-00415-REB-KLM-02, 2009 WL 1505164, at *2 (D. Colo. May 28, 2009) (unpublished). The Antiterrorism and Effective Death Penalty Act (AEDPA) imposes a one-year statute of limitations on habeas claims brought under § 2254. *See* 28 U.S.C. § 2244(d)(1). This limitations period generally runs from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." *See id.* § 2244(d)(1)(A).[4] In New Mexico, the time for seeking direct appellate review of a judgment expires thirty days after the judgment is filed. N.M. R. APP. P. 12-201(A)(2).

The one-year limitations period is tolled while the petitioner's properly filed application for state post-conviction review of his judgment is "pending." *See* 28 U.S.C. § 2244(d)(2). The application is considered to be pending through the time allowed for appeals of any denials of the petition, including the time for filing a motion for rehearing. *See Serrano v. Williams*, 383 F.3d 1181, 1185-86 (10th Cir. 2004). If such appeals are timely filed, the limitations period remains tolled until appellate review has concluded. *See id.* (citations omitted).

Respondents' halfhearted timeliness argument posits that the relevant date here is June 15, 2011, when the original Judgment and Sentence was entered in Sanchez's criminal proceeding. If calculated from that date, Respondents argue, Sanchez's deadline for seeking appellate review expired on July 15, 2011, and therefore the statutory deadline for filing his federal habeas appeal expired on July 15, 2012, since Sanchez did not seek state post-conviction

---

[4] Although § 2244(d)(1) provides other potential dates for measuring the one-year limitations period, *see* 28 U.S.C. § 2244(d)(1)(B)-(D), none of those provisions appear to be implicated by Sanchez's petition or other filings. Moreover, the date on which the judgment was filed in this case was necessarily the earliest of the four possible dates listed in these provisions. *See id.* § 2244(d)(1) (measuring the limitations period from the latest of the applicable dates). Thus, even if any of the other provisions could apply here, I see no need to address them, as I ultimately conclude that Sanchez's petition is timely when the limitations period is calculated from the date on which the controlling judgment was filed.

review until after that date. If, on the other hand, the Court were to treat the April 12, 2012 Corrected Judgment and Sentence as controlling, Respondents concede that Sanchez's federal petition "appears to be timely."

Section 2254 allows the Court to review a habeas petition brought by "a person in custody pursuant to the judgment of a State court." 28 U.S.C. § 2254(a). "Final judgment in a criminal case means sentence. The sentence is the judgment." *Burton v. Stewart*, 549 U.S. 147, 156 (2007) (quotation omitted). "*Burton* makes clear that the writ [of habeas corpus] and AEDPA, including its limitations provisions, are specifically focused on the judgment which holds the petitioner in confinement." *Reber v. Steele*, 570 F.3d 1206, 1209 (10th Cir. 2009) (quoting *Ferreira v. Sec'y, Dep't of Corr.*, 494 F.3d 1286, 1293 (11th Cir. 2007)); *see also Wilkinson v. Dotson*, 544 U.S. 74, 83 (2005) (recognizing that a habeas petition "seeks invalidation (in whole or in part) of the judgment authorizing the prisoner's confinement").

Respondents admit that it is the April 12, 2012 Corrected Judgment and Sentence "that likely authorizes Mr. Sanchez's confinement." Indeed, the fact that the latest judgment was designated as "Corrected" indicates that it was meant to supersede the "Amended" Judgment and Sentence, which itself was plainly intended to supersede the original Judgment and Sentence. As such, it is the Corrected Judgment and Sentence that authorizes Sanchez's confinement, and therefore the timeliness of Sanchez's petition must be measured by the date of that document's filing. *See Sigala v. Bravo*, 656 F.3d 1125, 1127 (10th Cir. 2011) (measuring the finality of a § 2254 petitioner's conviction from the date on which his amended judgment and sentence was entered).[5]

---

[5] Respondents argue that Sanchez himself "expressly challenges the initial judgment," citing to the first page of his federal habeas petition. This would suggest that Sanchez considered June 15, 2011— the date on which his original Judgment and Sentence was entered—to be the relevant date. In fact, Sanchez lists May 13, 2011—the date on which he signed his plea agreement—when asked for the "[d]ate

The controlling Corrected Judgment and Sentence was entered on April 12, 2012, and Respondents do not argue that the document was filed *nunc pro tunc* as of the entry date of the original Judgment and Sentence. Thus, Sanchez's deadline for appealing that judgment expired on May 12, 2012, *see* N.M. R. App. P. 12-201(A)(2), and therefore the one-year statute of limitations for filing his federal habeas petition began to run on that date, *see* 28 U.S.C. § 2244(d)(1). At the latest, the limitations period was tolled with thirty-four days remaining on April 8, 2013, the date file-stamped on Sanchez's state habeas petition.[6] After Judge Tatum denied that petition, Sanchez timely filed a writ of certiorari with the state supreme court, then timely filed a motion for reconsideration when that court denied the writ. The limitations period began to run again on September 11, 2013, after the New Mexico Supreme Court denied reconsideration, and Sanchez filed his federal habeas petition twenty-eight days later. Sanchez still had at least six days remaining in the limitations period on that date, and as such his federal petition was timely filed.

### EXHAUSTION AND PROCEDURAL DEFAULT

Even if a § 2254 petition is timely, the petitioner must show that he has exhausted the remedies available in state court. *See* 28 U.S.C. § 2254(b)(1)(A); *see also Bland v. Sirmons*, 459 F.3d 999, 1011 (10th Cir. 2006). To satisfy this requirement the petitioner must "give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845

---

of judgment of conviction (if you know)." (*See* Doc. 1 at 1.) Sanchez's mistaken understanding of the date of his judgment is not controlling, and at any rate I attribute this error to Sanchez's pro se status. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citations omitted) (liberally construing pleadings by pro se litigants).

[6] Sanchez asserts in his reply that the prisoner mailbox rule governs the filing date of his state habeas petition. *See Marsh v. Soares*, 223 F.3d 1217, 1218 n.1 (10th Cir. 2000) (citing *Houston v. Lack*, 487 U.S. 266, 270 (1988)). Because I find that Sanchez's federal habeas petition was timely even if the prisoner mailbox rule does not apply, I do not reach this question.

(1999). This includes pursuing discretionary review when that review is part of a state's ordinary appellate review process. *Id.*

When a petitioner has failed to exhaust state court remedies, a federal court generally should dismiss the petition without prejudice to give the petitioner an opportunity to exhaust those remedies. *See Demarest v. Price*, 130 F.3d 922, 939 (10th Cir. 1997). "However, in considering unexhausted claims, federal courts should consider whether, upon dismissal of the claims, the petitioner would then be able to raise them in the state courts." *Id.* "[I]f the court to which Petitioner must present his claims in order to meet the exhaustion requirement would now find those claims procedurally barred, there is a procedural default for the purposes of federal habeas review." *Dulin v. Cook*, 957 F.2d 758, 759 (10th Cir. 1992) (citing *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991)); *see also Woodford v. Ngo*, 548 U.S. 81, 93 (2006) (considering such claims to be "technically exhausted" but procedurally barred). A federal court will not consider defaulted claims unless the petitioner can demonstrate cause and prejudice or a fundamental miscarriage of justice. *See Coleman*, 501 U.S. at 750; *Smallwood v. Gibson*, 191 F.3d 1257, 1268 (10th Cir. 1999).

Here, Respondents argue that Sanchez failed to seek certiorari review from the New Mexico Supreme Court for his claim of ineffective assistance of counsel for failure to investigate potential defenses. In his application for certiorari, Sanchez's claim of ineffective assistance of counsel expressly hinged on two arguments, including failure to conduct a proper investigation. From a review of the documents attached to Sanchez's certiorari application, it is clear that the crux of Sanchez's "failure to investigate" argument is that "[h]ad tr[ia]l counsel conducted [a] proper investigation, he would have known that Petitioner had a perfect entrapment defense." (*See* Ex. R at 18.) Sanchez raises no other arguments regarding his attorneys' investigative

efforts in any of his filings. Construing his pro se submissions liberally, *see Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citations omitted), Sanchez's ineffective assistance sub-claims of "failure to conduct a proper investigation" and "failure to investigate potential defenses" are indistinguishable from each other. Respondents concede that Sanchez exhausted his "failure to conduct a proper investigation" sub-claim, and the record supports this conclusion. As such, I will consider the merits of this claim.

Respondents also assert that Sanchez failed to seek certiorari review for two other claims: ineffective assistance of counsel for failure to preserve issues, and violation of the Fourteenth Amendment when the state discussed his previous felony conviction at sentencing. This assertion is correct—there is no mention of these claims in Sanchez's stated grounds for seeking certiorari review from the state supreme court. Under New Mexico's procedural rules, a petitioner may file a petition for a writ of certiorari with the New Mexico Supreme Court within thirty days of the district court's order denying the petition. *See* N.M. R. App. P. 12-501(B). As Judge Tatum denied Sanchez's habeas petition almost twelve months ago, it is apparent that the state supreme court would now find these two claims to be barred.

Additionally, Sanchez has not shown that procedural default is inappropriate in these circumstances. Although Sanchez states that he accidentally omitted these two claims from his petition for writ of certiorari because he "lacks both the skill and knowledge to adequately prepare his defense," these factors do not constitute cause for default. *See Steele v. Young*, 11 F.3d 1518, 1522 (10th Cir. 1993) (citations omitted) (finding that a prisoner's pro se status and his lack of education do not satisfy the "cause and prejudice" standard). Sanchez also argues that a finding of procedural default would result in a fundamental miscarriage of justice because Judge Tatum violated New Mexico court rules by failing to appoint counsel for him for his pro

se habeas petition. But the rule that Sanchez cites requires appointment of counsel only if the court does not order a summary dismissal. N.M. R. APP. P. 5-802(E)(2). The brief "Decision and Order of Summary Dismissal," in which Judge Tatum denied Sanchez's state habeas petition, precluded the need for appointment of counsel under that rule.

Sanchez is procedurally barred from seeking a writ of certiorari for his purported grounds of relief involving the discussion of his prior felony conviction and ineffective assistance of counsel for failure to preserve issues. Further, Sanchez has not shown cause for the default, and he has not demonstrated that a failure to consider these claims will result in a fundamental miscarriage of justice. Accordingly, these claims are procedurally defaulted, and I proceed to consider the merits of Sanchez's remaining claims.

### STANDARD OF REVIEW

In § 2254 proceedings initiated after 1996, AEDPA requires federal courts to "be exquisitely deferential to the state court's resolution of the defendant's claims." *Black v. Workman*, 682 F.3d 880, 891 (10th Cir. 2012). The Supreme Court aptly described AEDPA as establishing "a difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt[.]" *Cullen v. Pinholster*, 563 U.S. ----, ----, 131 S. Ct. 1388, 1398 (2011) (citation and internal quotation marks omitted). Accordingly, if the merits of a claim were already adjudicated in state court, federal court habeas relief is only available if the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §§ 2254(d)(1) & (2).

In Sanchez's case, it is clear from the record that the state court adjudicated the merits of his claims. "'Adjudicated on the merits' has a well settled meaning: a decision finally resolving the parties' claims, with res judicata effect, that is based on the substance of the claim advanced, rather than on a procedural, or other ground." *Wilson v. Workman*, 577 F.3d 1284, 1308 (10th Cir. 2009) (citation omitted), *overruled on other grounds by Lott v. Trammell*, 705 F.3d 1167 (10th Cir. 2013). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Harrington v. Richter*, 562 U.S. ----, ----, 131 S. Ct. 770, 785 (2011); *see also Aycox v. Lytle*, 196 F.3d 1174, 1177 (10th Cir. 1999). This presumption "is a strong one that may be rebutted only in unusual circumstances." *Johnson v. Williams*, 568 U.S. ---, ---, 133 S. Ct. 1088, 1096 (2013). Sanchez does not assert that the New Mexico Supreme Court failed to decide his claim on the merits, and I see no evidence suggesting that it failed to do so. As such, I conclude that these claims were adjudicated on the merits and that AEDPA's deferential standards should therefore be applied to each of Sanchez's remaining claims.

Under § 2254(d)(1), clearly established federal law "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). Also included in this standard are "Supreme Court holdings in cases where the facts are at least closely-related or similar to the case *sub judice*. Although the legal rule at issue need not have had its genesis in the closely-related or similar factual context, the Supreme Court must have expressly extended the legal rule to that context." *House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008) (citing, *e.g.*, *Carey v. Musladin*, 549 U.S.

70 (2006)). The existence of clearly established federal law is a threshold matter for § 2254(d)(1) relief; in its absence, relief must be denied. *See id.* at 1017-18 (citing *Musladin*, 549 U.S. at 77).

A decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Douglas v. Workman*, 560 F.3d 1156, 1170 (10th Cir. 2009) (citation omitted). A state court decision is an unreasonable application of federal law if the court applied clearly established federal law in an objectively unreasonable manner. *Williams*, 529 U.S. at 413. "[A]n *unreasonable* application of federal law is different from an *incorrect* or *erroneous* application of federal law." *Id.* at 412. Instead, "a decision is 'objectively unreasonable' when most reasonable jurists exercising their independent judgment would conclude the state court misapplied Supreme Court law." *Maynard v. Boone*, 468 F.3d 665, 671 (10th Cir. 2006). Even if the state court does not explain its reasoning, the applicant must show that "there was no reasonable basis for the state court to deny relief." *Richter*, 131 S. Ct. at 784; *see also Aycox*, 196 F.3d at 1177 (clarifying that under AEDPA, "we owe deference to the state court's *result*, even if its reasoning is not expressly stated"). Therefore, "only the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254." *Maynard*, 468 F.3d at 671.

A state court's findings of fact are presumed correct unless rebutted by the petitioner by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1). The state court's determination of the facts is unreasonable if the state court plainly misapprehends the record in making its factual findings and the misapprehension goes to a factual issue that is central to the claim. *Wiggins v. Smith*, 539 U.S. 510, 528 (2003). This standard is "demanding but not insatiable . . . [because]

'[d]eference does not by definition preclude relief.'" *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)).

**HEARING**

Federal courts are required to take AEDPA's deferential standards into account when deciding whether to hold an evidentiary hearing. *See Pinholster*, 131 S. Ct. at 1399 (citing *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007)). A federal district court may not conduct "an evidentiary hearing on a habeas claim that [the] petitioner failed to develop in state court." *Young v. Sirmons*, 486 F.3d 655, 679 (10th Cir. 2007) (citing 28 U.S.C. § 2254(e)(2)). However, even where an evidentiary hearing is permissible, the "backward-looking language" of § 2254(d)(1) limits review under that provision to "the record that was before the state court that adjudicated the claim on the merits," *Pinholster*, 131 S. Ct. at 1398, and the language of § 2254(d)(2) suggests that the same is true of review under that provision, *see* 28 U.S.C. § 2254(d)(2) (allowing habeas relief only if the state court decision "resulted in a decision that was based on an unreasonable determination of the facts *in light of the evidence presented in the State court proceeding*" (emphasis added)). Thus, "when the state-court record 'precludes habeas relief' under the limitations of § 2254(d), a district court is 'not required to hold an evidentiary hearing.'" *Pinholster*, 131 S. Ct. at 1399 (quoting *Schriro*, 550 U.S. at 474).

As will be shown below, even assuming that Sanchez properly developed the record in state court, it is evident that this state court record precludes habeas relief under § 2254(d). Accordingly, an evidentiary hearing is unnecessary to the resolution of Sanchez's claims and need not be held.

**DISCUSSION**

Sanchez's remaining claims include allegations of ineffective assistance of counsel, chain-of-custody/evidentiary errors, Confrontation Clause violations, failure of the prosecution to disclose favorable evidence, and general prosecutorial misconduct. Because the New Mexico Supreme Court's denial of the chain-of-custody, Confrontation Clause, and prosecutorial-misconduct claims plainly was not contrary to federal law and did not involve a misapprehension of law or facts, I address those claims first before moving to Sanchez's more complex claims regarding withheld evidence and ineffective assistance.

## I.    Chain of Custody, Confrontation Clause, and Prosecutorial Misconduct

In Claim II, Sanchez complains, somewhat ambiguously, of various problems with the evidence that may have been introduced against him, asserting that the trial court should have suppressed the evidence in question due to chain-of-custody concerns. Sanchez also raises vague allegations of Confrontation Clause violations in Claim III and of prosecutorial misconduct in Claim V.

In the Decision and Order of Summary Dismissal, Judge Tatum concluded that Sanchez had waived his claims of pre-plea constitutional violations by entering into the plea agreement. This conclusion is borne out by Sanchez's written declaration that he was giving up "any and all motions, defenses, objections or requests which he has made or raised, or could assert hereafter, to the Court's entry of judgment against him." At the hearing held after this plea agreement was reached, Sanchez also affirmed that he had waived his constitutional rights relating to a trial in exchange for the court's acceptance of the agreement. (HR 10:14:38-:15:34.)

> As the Supreme Court has explained,
>
> a guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court

16

> that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea . . . .

*Tollett v. Henderson*, 411 U.S. 258, 267 (1973).

Sanchez's chain-of-custody, Confrontation Clause, and prosecutorial-misconduct challenges do not attack the voluntary or intelligent nature of his plea. Nor do these claims constitute a jurisdictional challenge. *Cf. Osborn v. Shillinger*, 997 F.2d 1324, 1327 (10th Cir. 1993) (citing, *e.g.*, *Henderson*, 411 U.S. at 267) (finding that a guilty plea "bars subsequent challenges based on nonjurisdictional, pre-plea errors"). Further, Sanchez's filings make it clear that he knew about these alleged problems at the time that he entered into his plea agreement, yet this knowledge did not convince him to reject the agreement, plead not guilty, and go to trial. I therefore find the state court's determination of the facts and application of the law on these issues to be reasonable, and thus these claims are ineligible for federal relief.

Perhaps anticipating this outcome, Sanchez argues in his reply brief that Judge Tatum's unexplained Amended Judgment and Sentence invalidated the plea agreement. He does not point to any caselaw that supports this position, and I am aware of none given these circumstances. This is not, for example, a situation where the judge rejected a sentencing recommendation included in a plea agreement after the state reneged on its promise not to oppose the recommendation. *Cf. State v. Pieri*, 207 P.3d 1132, 1136-38 (N.M. 2009) (requiring the court to provide the defendant an opportunity to withdraw his guilty plea in such instances). Instead, the State endorsed the agreement, as evidenced by the prosecutor's signature on the agreement itself as well as on both the original and Corrected Judgment and Sentences, and Judge Tatum accepted the agreement at the plea hearing (HR 10:23:17-:25). Sanchez's conviction and incarceration is pursuant to the operative Corrected Judgment and Sentence that Judge Tatum,

the State, and Sanchez signed; that is consistent with the plea agreement; and that superseded any earlier judgment in the action.[7]

It is apparent that Sanchez's plea agreement remains in force and was not invalidated by the Amended Judgment and Sentence. As such, the state court's legal and factual determinations were reasonable, and Sanchez cannot be granted habeas relief as to his chain-of-custody claim, his Confrontation Clause claim, or his prosecutorial-misconduct claim.

## II.    *Brady* Violations

Slightly more complicated is Sanchez's contention in Claim III that the prosecution withheld documents relating to the medical treatment of the victim despite his demands that they be provided to him.[8] Considering the relatively unsettled nature of federal law in this area, I consider this claim separately from Sanchez's other claims of pre-plea constitutional violations.

"[S]uppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or to punishment . . . ." *Brady v. Maryland*, 373 U.S. 83, 87 (1963). Such suppression can lead to "an unfair trial to the accused" because the withholding of evidence that, "if made available, would tend to exculpate him or reduce the penalty helps shape a trial that bears heavily on the defendant." *Brady*, 373 U.S. at 87-88. A state court's resolution of a *Brady* claim is reviewed under 28 U.S.C. § 2254(d)(1). *See Knighton v.*

---

[7] Moreover, the Corrected Judgment and Sentence was entered following Sanchez's own motion to correct the judgment, in which he argued that the Amended Judgment and Sentence was improperly presented and that "[a] new and corrected 'Judgment and Sentence' should be filed . . . which accurately reflects the agreement of the parties [and] the judgment of the Court." (Ex. E.) Having achieved precisely this result by arguing that the Amended Judgment and Sentence was inoperative, it would be anomalous to allow Sanchez to benefit from the inverse argument simply because he now has buyer's remorse with respect to his plea agreement.

[8] Sanchez does not expressly state that any alleged *Brady* violations affected the voluntary and intelligent nature of his plea agreement. *See Henderson*, 411 U.S. at 267. However, applying a liberal construction of his petition, I find that Sanchez "adequately, but barely, suggests" that this alleged constitutional violation undermined the validity of his plea. *See Miller v. Janecka*, --- F. App'x ---, ---, 2014 WL 983406, at *3 (10th Cir. 2014) (unpublished).

*Mullin*, 293 F.3d 1165, 1173 (10th Cir. 2002) (citing *Moore v. Gibson*, 195 F.3d 1152, 1165 (10th Cir. 1999)).

The Supreme Court's focus on the effect of withheld evidence on the fairness of a trial has implications for the applicability of *Brady* to pre-plea proceedings. "When a defendant pleads guilty he or she, of course, forgoes not only a fair trial, but also other accompanying constitutional guarantees." *United States v. Ruiz*, 536 U.S. 622, 628-29 (2002) (citing *Boykin v. Alabama*, 395 U.S. 238, 243 (1969)). Impeachment evidence in particular "is special in relation to the *fairness of a trial*, not in respect to whether a plea is *voluntary*." *Id.* at 629. For this and other reasons, the Supreme Court has held that the State is not required to disclose impeachment evidence to the defendant prior to the entry of a plea agreement. *Id.* at 629-33. Although some courts have also addressed the impact of the prosecution's failure to disclose non-impeachment exculpatory evidence on the voluntary nature of a guilty plea, *see, e.g.*, *United States v. Ohiri*, 133 F. App'x 555, 562 (10th Cir. 2005) (unpublished), the Supreme Court has not yet done so.

It is not entirely clear whether Sanchez believes that the evidence purportedly withheld constitutes impeachment evidence or exculpatory evidence. If Sanchez contends that these medical records constitute impeachment evidence, his argument that the State's nondisclosure of the report constituted a *Brady* violation is plainly foreclosed by *Ruiz* and cannot serve as a basis for habeas relief. *See* 536 U.S. at 633 ("[T]he Constitution does not require the Government to disclose material impeachment evidence prior to entering a plea agreement with a criminal defendant.").

Moreover, deference under AEDPA to the state court's decision precludes habeas relief even if the allegedly undisclosed document were considered to be exculpatory, as the applicability of *Brady* in such circumstances is far from clearly established. It is true that the

Tenth Circuit has suggested in an unpublished (and therefore non-binding) opinion that the nondisclosure of exculpatory evidence prior to the entry of a plea agreement may, in some cases, implicate due process concerns. *See Ohiri*, 133 F. App'x at 560-62. The Seventh Circuit has reached a similar determination, relying upon the Supreme Court's purported distinction between impeachment and exculpatory evidence in *Ruiz. See McCann v. Mangialardi*, 337 F.3d 782, 787 (7th Cir. 2003) (citation omitted). Yet other circuits have concluded that *Ruiz* draws no such distinction. *See United States v. Mathur*, 624 F.3d 498, 506-07 (1st Cir. 2010); *Friedman v. Rehal*, 618 F.3d 142, 154 (2d Cir. 2010); *United States v. Conroy*, 567 F.3d 174, 179 (5th Cir. 2009); *Jones v. Cooper*, 311 F.3d 306, 315 (4th Cir. 2002).

More importantly, the Supreme Court has not itself extended *Brady* protection to the nondisclosure of exculpatory evidence prior to a plea agreement, a fact that ends the discussion. *See* 28 U.S.C. § 2254(d)(1) (stating that federal law must be clearly established "as determined by the Supreme Court of the United States"). Any suggestion in *Ruiz* that impeachment and exculpatory evidence are treated differently in this context constitutes irrelevant dicta and must be disregarded. *See Williams*, 529 U.S. at 412. In the absence of clearly established federal law, I cannot conclude that the state court's rejection of Sanchez's *Brady* claim was inappropriate. *See House*, 527 F.3d at 1017-18.

Finally, even if *Brady* protection could conceivably be extended to pre-plea nondisclosures of exculpatory evidence, it still was not unreasonable or contrary to law for the state court to have rejected this claim. To establish a *Brady* violation, Sanchez bears the burden of showing that (1) the evidence withheld was favorable to him; (2) the evidence was suppressed by the State; and (3) the suppression resulted in prejudice to him. *See Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). Even assuming that Sanchez could show that Dr. Davis's report was

favorable exculpatory evidence, the fact that the report is dated almost three months prior to the plea hearing and is addressed to Sanchez's counsel (*see* Ex. F at 17) casts significant doubt on his argument that the State suppressed this evidence. Given these factors, it cannot be said that the state court's decision was contrary to or an unreasonable application of clearly established federal law, and therefore Sanchez's *Brady* claim must fail.

### III.      Ineffective Assistance of Counsel

As to Claim I, Sanchez asserts in the documents attached to his federal habeas petition that had his counsel conducted a "proper investigation, he would have known that Petitioner had a perfect entrapment defense." Sanchez states that he "demanded this defense be used," and his "[c]ounsel's failure le[]d to Petitioner's plea agreement of guilty." He also argues that his attorneys "failed to aid [him] in enter[ing] his son's testimony," which "would have supported Petitioner's entrapment defense."[9]

Unlike the other pre-plea claims discussed above, "[i]t is long-settled law that ineffective assistance in negotiating and explaining a plea agreement or in conjunction with the entry of a guilty plea can undermine the validity of the plea." *Miller v. Janecka*, --- F. App'x ---, ---, 2014 WL 983406, at *3 (10th Cir. 2014) (unpublished) (citing *Henderson*, 411 U.S. at 267). "The longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (quotation omitted). If a defendant pleads guilty on counsel's advice, that defendant may only attack the voluntary and intelligent character of his guilty plea by showing that counsel's advice was not "within the range of competence demanded of attorneys in criminal cases." *See Henderson*, 411 U.S. at 264 (citation omitted). In other

---

[9] Again, although Sanchez does not expressly state that his attorneys' failure to secure his son's testimony impacted his decision to accept the plea agreement, I find that his petition could be liberally construed to raise this argument. *See Henderson*, 411 U.S. at 267; *Miller*, 2014 WL 983406, at *3.

words, the defendant "must show *both* (1) that counsel's performance was deficient *and* (2) that this deficiency prejudiced [his] defense." *United States v. Carr*, 80 F.3d 413, 417 (10th Cir. 1996) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). To show prejudice, Sanchez must demonstrate that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Lockhart*, 474 U.S. at 57 (quoting *Strickland*, 466 U.S. at 694).

When a petitioner's claim of ineffective assistance turns on the attorney's alleged failure to investigate, the existence of prejudice will depend on whether any discovery resulting from that investigation would have led counsel to change his recommendation as to a plea agreement, which in turn depends in large part on whether the results of this investigation would have changed the outcome of a trial. *Id.* at 59. "Similarly, where the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the 'prejudice' inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial." *Id.* In either case, "a petitioner's 'mere allegation' that he would have insisted on trial but for his counsel's errors . . . is ultimately insufficient to entitle him to relief. Rather, [courts] look to the factual circumstances surrounding the plea to determine whether the petitioner would have proceeded to trial." *Miller v. Champion*, 262 F.3d 1066, 1072 (10th Cir. 2001) (internal citations omitted).

At this point, it is worth considering the evidence that the prosecution was expected to present had Sanchez gone to trial.[10] The victim in this case, Natalie Lucero, was expected to

---

[10] The facts recited in this paragraph are taken from the Affidavit of Arrest Warrant completed by Portales police officer Kirk Wilson (RP 19-23); the Recovery Log for the search warrant executed by Wilson at Sanchez's residence on May 19, 2010 (RP 42); and statements made by the prosecution at Sanchez's plea hearing held on June 14, 2011 (HR 10:15:35-10:20:36 AM). Through his attorney, Sanchez conceded at his plea hearing that he was satisfied that the prosecution would be able to produce this evidence. (HR 10:20:38-:48.)

testify that Sanchez, her boyfriend of four years, fought with her on April 28, 2010, pushing her into the bathroom and causing her to hit her head on a toilet, and then undressed her and burned her bloody clothes in his backyard so as to avoid criminal charges. Roosevelt County Sheriff's Deputy Raul Rosa was also expected to testify that Sanchez brought Lucero to Roosevelt General Hospital on May 4, 2010. According to the prosecution, Rosa would have testified that Sanchez told him at the time that Lucero was a friend of the family who did not live with him; that she was often drunk and bruised easily; and that she suffered her injuries when she fell off of a bicycle. Additionally, Lucero's doctor at the hospital told police, and was ready to testify, that when Lucero arrived at the hospital, she had multiple bruises at various stages of healing on her entire body; that these bruises included one in the shape of a shoe print on her thigh; that Lucero's injuries also included a life-threatening subdural hematoma that required air transport to a hospital in Lubbock, Texas, for emergency brain surgery; that Lucero suffered from memory loss that was consistent with the discovered head injuries; and that these injuries were consistent with domestic abuse and were not consistent with a fall off of a bicycle. Finally, Portales police officer Kirk Wilson was expected to testify that he interviewed Lucero, her family, and her medical providers after Lucero was released from the hospital, and he would have stated that he executed a search warrant at Sanchez's home that revealed blood stains in Sanchez's bathroom and burnt clothing that Lucero identified as her own.

At the plea hearing, Judge Tatum concluded that Sanchez knowingly, voluntarily, and intelligently entered into his plea agreement. (HR 10:21:03-:06.) In his Decision and Order of Summary Dismissal, Judge Tatum accurately observed that "[t]his case involved strong evidence against the Petitioner and serious injuries to the victim. The Petitioner could have been sentenced to the maximum amount of incarceration had there not been a plea agreement," which would

have amounted to a nine-year term of incarceration and a $16,000 fine (*see* HR 10:14:10-:23). "[A]s a result," Judge Tatum concluded, "the Petitioner likely benefitted from the sentence in the plea agreement." These findings, which I agree with and adopt, support the conclusion that even without the allegedly deficient representation of counsel, Sanchez would not have gone to trial. *See Champion*, 262 F.3d at 1072.

Sanchez's insistence that he "had a perfect entrapment defense" does not alter the reasonableness of this conclusion. Judge Tatum described defense counsel's decisions regarding investigation of defenses as "trial tactics," a characterization that is consistent with the viability of that defense in this case. In New Mexico, "subjective entrapment" occurs when government officials "originate the criminal design and implant the disposition to commit the crime in the mind of an innocent person in order to enable prosecution," *In re Alberto L.*, 57 P.3d 555, 558 (N.M. Ct. App. 2002), while "objective entrapment" occurs when "the actions of government officials create a substantial risk that an ordinary person who was not so predisposed would commit a crime," *id.* at 559. Sanchez's filings and the record in general are bereft of any allegations or facts that would support either of these defenses. There is no reason to believe that any further development of an entrapment defense by his counsel would have encouraged Sanchez to go to trial rather than accept the plea agreement. *See Champion*, 262 F.3d at 1072. Given these circumstances, I cannot say that the New Mexico Supreme Court's denial of this sub-claim was unreasonable or contrary to law.

Nor does Sanchez demonstrate that the outcome of his criminal proceeding would have been different had his attorneys secured the testimony of his son. Although Sanchez insists that his son's testimony at trial "would have supported [his] entrapment defense" by proving that

Lucero and the arresting officer "fabricated evidence," his "mere allegation" to this effect is not enough to support a claim of ineffective assistance. *See id.* (quotation omitted).

Most damningly, Sanchez's claims of ineffective assistance fly in the face of his written and oral declarations upon his acceptance of the plea agreement. Sanchez's remaining allegations of attorney error relate to his desire to pursue an entrapment defense, and his statements in his state habeas petition indicate that he was already contemplating these matters before accepting his plea agreement. (*See* Ex. F at 3 ("Petitioner demanded this [entrapment] defense be used."); *id.* ("Counsel failed to aid defendant in enter[ing] his son[']s testimony[] [because] his son is only (11) years old.").) Yet as part of the plea agreement that he signed, Sanchez expressly waived all defenses available to him. (*See* Ex. D at 3.) Sanchez affirmed this waiver at his plea hearing, where he agreed to be bound by the terms of the plea agreement (HR 10:10:54-:11:05), agreed in particular to waive his constitutional rights relating to a trial in exchange for the court's acceptance of the plea agreement (*id.* 10:14:38-:15:34), admitted that his attorneys had answered all of the questions he might have had with respect to the terms of the agreement (*id.* 10:10:28-:38), and expressed satisfaction with his attorneys (*id.* 10:14:31-:34). Thereafter, Sanchez "received precisely the sentence he agreed to in the plea agreement. Receiving a predetermined and demonstrably favorable sentence strongly suggests he would not have refused the agreement . . . ." *Miller*, 2014 WL 983406, at *3. If anything, Sanchez's decision to accept this plea agreement and sentence and waive his entrapment defense, after having discussed the viability of this defense and related strategies with his attorneys, serves to affirm, rather than "attack[,] the voluntary and intelligent character of the guilty plea." *See Henderson*, 411 U.S. at 267.

Even assuming that his counsel was deficient in failing to investigate an entrapment defense, Sanchez cannot show that he would not have accepted the plea agreement but for this

purported failure. *See Lockhart*, 474 U.S. at 57. Nor does Sanchez show that he would have proceeded to trial if his attorneys had secured his son's testimony. *See id.* As such, Sanchez has not shown prejudice due to his attorneys' alleged deficiencies, and he therefore has failed to demonstrate that the state court's denial of his ineffective assistance claim was unreasonable or contrary to clearly established federal law. *See* 28 U.S.C. § 2254(d)(1). He has also failed to demonstrate that the state court's determination of the facts in the record as to this claim was unreasonable. *See* 28 U.S.C. § 2254(d)(2). Accordingly, this claim cannot serve as a basis for habeas relief.

## CONCLUSION

For the foregoing reasons, I recommend that Sanchez's Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (Doc. 1) be DENIED.

---

**THE PARTIES ARE NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the Proposed Findings and Recommended Disposition. If no objections are filed, no appellate review will be allowed.**

---

_William P. Lynch_
WILLIAM P. LYNCH
UNITED STATES MAGISTRATE JUDGE

A true copy of this order was served
on the date of entry--via mail or electronic
means--to counsel of record and any pro se
party as they are shown on the Court's docket.